TAYLOR *v.* THE PHILADELPHIA & READING RAILROAD Co.*

FARMERS' & MECHANICS' NAT. BANK OF PHILADELPHIA *v.* THE SAME.

(*Circuit Court, E. D. Pennsylvania.* August 6, 1880.)

1. RAILROAD—RECEIVERS—APPLICATION OF INCOME TO CLAIMS FOR LABOR AND MATERIAL FURNISHED BEFORE FORECLOSURE PROCEEDINGS.

Where the holders of railroad mortgage bonds obtain the appointment of receivers pending proceedings for foreclosure, the court will apply the net income, in its discretion, to the payment of the employes and of the material men, who have, prior to the appointment of the receivers, furnished the labor, materials, and supplies necessary for the operation of the road.

2. SAME—METHOD OF PAYMENT—RECEIVERS' CERTIFICATES.

As the fund is produced by the administration of the court, it may be distributed, at the discretion of the court, in such manner as not to embarrass the receivers, and prior claims for labor and materials may be paid by certificates, bearing interest, and payable out of any funds applicable thereto, at such dates as may be afterwards fixed by the receivers.

This was an application by receivers for authority to pay claims for labor, material, etc., furnished for the operation of

*Reported by Frank P. Prichard, Esq., of the Philadelphia bar.

the road within five months previous to their appointment. The special masters in the cause reported upon the application as follows:

"By the decree of your honorable court, of May 24, 1880, appointing the receivers, it was, among other things, ordered:

"'That the receivers be, and they are hereby, authorized to collect the income, tolls, and profits of the said railroad and canals, and to make appropriate payments therefrom on account of the accruing rents, and other necessary charges; also all the sums now due and maturing to the employes of the said corporations defendant, *and the amounts due and maturing, and to arise and mature, for materials and supplies* about the operation and for the use of the said railroads and canals, * * * and to continue the mining operation of the said The Philadelphia & Reading Coal & Iron Company, and to sell and dispose of the coal already mined or to be mined, either for cash or on the usual credits, and out of the proceeds thereof to pay the wages, taxes, royalties, rents, freights, *debts for supplies*, and interest due on securities charged on the property, to protect the same from forfeiture.'

"We have carefully considered the terms of this decree with respect to the present subject, and understand that it is in substance the same in its application to each of the two companies defendant, and that it plainly authorizes the receivers to make payments, from the income of each of them, of all sums due or maturing for materials or supplies by said companies respectively. Such being the decree of your honorable court, it does not appear to be necessary that we should inquire whether the authority which it has conferred should have been granted; but in view of the large amount involved, and of the fact that mortgage creditors, who might be supposed to be prejudiced by allowing a preference to these claims, are not actually before the court, the receivers and their counsel have requested us to make such a report upon the whole matter as we might deem to be due to its importance. We have accordingly made a careful examination of the authorities, and have found that the decree is, in the particular now under consideration, fully supported by previous similar orders and adjudications in other cases.

"In *Trotter* v. *The Catawissa, Williamsport & Erie R. Co.*, (supreme court of Pennsylvania, January term, 1860, No. 8,) the receivers were—

"'Authorized to collect the income, tolls, and profits of the same, [the railroad, etc.,] and to make appropriate payments therefrom, and of the expense of this proceeding, and also all the sums now due and maturing to the employes upon said railroad, and *the amounts due and maturing, and to arise and mature, for materials and supplies* about the operation and for the use of said railroad,' etc.

"In the case of the *Ohio Cent. R. Co.* (circuit court of the United States for Ohio) the court, *McLean*, J., in appointing a receiver, directed the surplus earnings to be applied to making payments in a designated order of priority; and—

"'*First*, to the payment of all debts due for labor, *materials, and supplies* furnished the company within the six months prior to the date of the decree, and a balance due for construction.'

"In the case of the *People of N. Y.* v. *Erie Ry. Co.* (supreme court, city

and county of New York) the court, in appointing a receiver, ordered, amongst other things, that he should ascertain—

" ' The amount due by said company, and unpaid, for current *materials and supplies* purchased for the use and operation of the railroads of the said company, within four months prior to the entry of this order, and he shall pay the amount found to be justly due; but he shall not have power to pay such debts of longer standing without further order of this court.'

" In the case of *Clark* v. *The Williamsport & Elmira R. Co.* (supreme court of Pennsylvania) that part of the order appointing the receiver, which had directed him to pay—

" 'All sums due or maturing to the employes of said railroad, and the amounts due and maturing for *materials and supplies* about the operation for the use of said railroad,'—

—" was objected to; but the court held that this direction in the order was proper, and should ˙ e retained, notwithstanding the objection, *Strong,* J., saying:

" ' There is obvious justice in paying out of the gross bills of the railroad the workingmen and material men who have kept it in use. Their labor and supplies have enured to the benefit of the mortgage bondholders; and if they had been paid at the time when the labor and materials were furnished, as they should have been, even in preference to the mortgagees, no one could have complained. Their preferment now places the mortgage bondholders in no worse condition than they would have been if payment had been made when the debts were contracted. The equity of the employes was then superior, and I am unable to see why it is less now.'

" The learned judge then refers to several authorities, and overrules the motion to amend the order to the receiver, either by striking out the direction which was complained of, or by adding thereto a proviso that nothing therein contained should in anywise affect or prejudice the rights at law or in equity of the first-mortgage bondholders. This opinion of Justice Strong has not been reported, but we have examined a printed copy of it. It is amply supported by the supreme court of the United States in the case of *Fosdick* v. *Schall*, 99 U. S. 235, hereafter referred to; and see, also, *Gurney* v. *The Atlantic & Great Western R. Co.* 58 New York Court of Appeals, (13 Sickels,) 358.

" The rule followed by your honorable court, in its decree appointing these receivers, thus appears to be firmly established; and the grounds upon which it is based, and which are set forth in the opinion of Justice Strong, to which reference has just been made, are also stated in the opinion of Chief Justice Waite in the case of *Fosdick* v. *Schall, supra;* and it may now be taken to be the well-settled doctrine of the American courts, that where the holders of railroad mortgage bonds obtain the appointment of a receiver, pending proceedings for foreclosure, the court will apply the net income, in its discretion, to the payment of the employes, and of the material men, who have furnished the labor, materials, and supplies necessary for the operation of the road. In some of the cases, a limit as to the time within which the labor must have been performed, or the materials or supplies furnished, has been fixed; but there is no definite rule as to the time to be designated, and in every case it must depend upon

the discretion of the chancellor as to what time, if any, should be named. In the present case, however, the absence of such provision is unimportant, as all the materials and supplies in question were furnished after the first of January, 1880, and the order appointing the receivers was made upon the twenty-fourth of May of the same year, so that the period during which the materials and supplies were furnished does not extend beyond five months prior to the decree, and if the order had been limited to that period it would have been supported by the precedents.

"The doctrine of which we have been speaking is not in conflict with the priority secured by the mortgage to the bondholders, nor does it defeat their lien. When foreclosure takes place no one can compete with the mortgage creditors in the distribution of the proceeds of the mortgaged property; but the fund which is now the subject of administration is that merely which arises from carrying on the business of the corporations defendant, under the orders and direction of the court, and it therefore may justly be applied as the chancellor shall find to be equitable.

"This fund being produced by the administration of the court itself, is, it should also be stated, to be distributed according to the well-regulated discretion of the court, and it follows that material men, as well as others who participate in that distribution, must submit to such terms as the court may impose; and no order will be made requiring payment at such times or in such manner as will embarrass the receivers in the conduct of the business. In the present case we fully concur with the counsel for the receivers that it will not be possible to fix a definite time for payment of the claims now under consideration. The receivers are virtually in the position of trustees charged with the duty of protecting the properties in their hands for the benefit of all parties in interest so far as it may be possible for them to do so. Many of the properties are subject to liens or rentals, but are of much greater value than the amount of the encumbrances or charges upon them. When the income from a particular property will more than pay the charges upon it, it is plain that the revenue should be first applied to such payments; and, even in cases where no income is received, it is still the obvious duty of the receivers to preserve those assets which have an undoubted margin of value. It may be necessary, therefore, for the benefit of the estate as a whole, to apply earnings of either company to protect valuable investments, and for this reason to postpone somewhat the creditors holding these claims for materials and supplies. We are, however, satisfied that a certificate of indebtedness would be of much importance to those who otherwise might be greatly inconvenienced by failing to receive payment as they had expected, and we see no objection to giving to this class of creditors certificates in the form embodied in the decree which we recommend at the end of this report.

"In addition to the facts which we have already stated, we report, from the evidence adduced before us, that the amount due and maturing for materials and supplies by the Philadelphia & Reading Railroad Company is about $1,265,000 to the twenty-fourth day of May, 1880, and that the amount due for materials and supplies by the Philadelphia & Reading Coal & Iron Company to the same date is about $550,500."

The masters reported a form of order authorizing the issue of certificates for the amount due, bearing interest, and payable out of any funds in the hands of the receivers applicable thereto at such date as might be fixed by the receivers after 30 days public notice.

*Samuel Dickson, R. L. Ashhurst,* and *James E. Gowen,* for receivers.

McKENNAN, C. J.     The order referred to in the foregoing report was made with special reference to the principles announced and discussed in *Fosdick* v. *Schall,* 99 U. S. 235. It was deemed to be a full warrant for the order, as was also the manifest justness of the·method of appropriation prescribed. The masters have shown that it has also the support of other adjudications, and specially of the judgment of the eminent circuit justice of this circuit, which of itself commands controlling consideration in this court.

The report of the masters is therefore approved, and it is directed that an order be entered in the form therein recommended by them.